UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

KATAWBA DE LA ROSA,

                     Plaintiff,

      vs.

THE CITY OF NEW YORK, NEW YORK CITY
FIRE DEPARTMENT, and RONALD
RICCITELLI, individually,

                  Defendants.

------------------------------------------------------------------------X

Civil Case No.

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

Plaintiff Katawba De La Rosa, by her attorney(s), Erdal Employment Law, LLC, hereby complains of Defendants the City of New York ("the City"), New York City Fire Department ("FDNY"), and Ronald Riccitelli (collectively, "Defendants") upon information and belief, as follows:

## PRELIMINARY STATEMENT

> *"It's been a number of years and our firefighters in the field are still out there trying to change the negative culture and traditions hoisted upon us," said [Regina] Wilson, the first woman president of the Vulcan Society. "We're sick of waiting, sick of being hazed, sick of being harassed and sick of dealing with this."[1]*

1. Despite a historic settlement in 2014 between the FDNY and the Vulcan Society, a fraternal organization of Black firefighters, marshals, and fire inspectors, the City's Fire Department is still struggling to address and rectify the racial discrimination that permeates the firehouses across the five boroughs.

---

[1] https://www.firehouse.com/leadership/news/53028938/racism-discrimination-still-simmering-in-fdny-firehouses-vulcan-society-head-claims. (Last visited December 1, 2024).

2.   Similarly, women – especially African-American women – in the FDNY are subjected to sex-based discrimination and sexual harassment that is ignored by the Department. Even worse, those who are victims of race- and sex-based discrimination and harassment are actively told *not* to complain to the FDNY's Equal Employment Opportunity Office, and instead go through the "chain of command." This often involves the perpetrator of the discriminatory animus, leading to the FDNY to aid, abet, condone the wrongful behavior, and/or ignore the employee's complaints.

3.   As a result, in September 2022, Anita Daniel, then an eight-year veteran firefighter, spoke to City Council's Committee on Fire and Emergency Management related to, among other issues, feces being smeared on and around the toilet in her bathroom at her firehouse. Firefighter Daniel told the City's governing body, **"This was too much…Everyone has their limits."**[2]

4.   Firefighter Daniel also reported that an FDNY Captain had touched her behind, **an incident that was video-recorded**, and that former FDNY Commissioner Laura Kavanagh showed the video to other Captains within the administration, during the investigation, before advising Daniel of the video.[3] According to Firefighter Daniel, **"[t]his sexual predator is still in the FDNY."**[4]

5.   In that same hearing before the Committee on Fire and Emergency Management, an African-American firefighter warned about a climate within the firehouses being **"radicalized"** and statements from Caucasian firefighters who are angered about a Black man being Mayor, and that **"George Floyd is a piece of sh*t."**

---

[2] https://patch.com/new-york/prospectheights/black-firefighters-say-fdny-harassment-rampant-unchecked-report. (Last visited December 1, 2024).

[3]  https://legistar.council.nyc.gov/MeetingDetail.aspx?ID=993885&GUID=66E9D195-71D4-45CF-B03B-862A3791DFE8&Options=info%7C&Search=# (statement begins at approximately the 3:06:30 mark). (Last visited December 1, 2024).

[4] https://patch.com/new-york/prospectheights/black-firefighters-say-fdny-harassment-rampant-unchecked-report. (Last visited December 1, 2024).

6. Despite these appalling instances of discrimination and sexual harassment, the FDNY failed to take any concrete corrective action to address or remedy the conduct.

7. Plaintiff, herself a Latina and African-American female, was likewise subjected to this hostile work environment within the FDNY, rife with race- and sex-based discrimination and harassment, yet was expected to ignore the behavior and perform her duties and responsibilities, and even worse, survive and thrive.

**NATURE OF THE CASE**

8. Plaintiff Katawba De La Rosa complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"),  the Family and Medical Leave Act of 1993, 29 U.S.C.§ 2601 et seq. (the "FMLA"), the New York State Human Rights Law, Executive Law § 296 *et seq.* ("NYSHRL") and the New York City Human Rights Law, the Administrative Code of the City of New York, §§ 8-101 *et seq.* ("NYCHRL"), based on the supplemental jurisdiction of this Court pursuant to United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966) and 28 U.S.C. § 1367 seeking declaratory and injunctive relief and damages to redress the injuries she suffered as a result of being discriminated against by her employer on the basis of her race/ethnicity (Hispanic/Latina), color (Black), and sex/gender (female), together with sexual harassment, hostile work environment, retaliation; FMLA interference and/or retaliation; and wrongful termination.

**JURISDICTION AND VENUE**

9. Jurisdiction of this action is conferred upon this Court as this case involves a federal question under Title VII. The Court also has jurisdiction pursuant to 29 U.S.C. § 2617; 28 U.S.C. §1331, § 1343 and pendent jurisdiction thereto.

10. This Court also has supplemental jurisdiction under the State and City law of the State of New York.

11. On or about November 8, 2022, Plaintiff submitted a Charge of Discrimination to the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC Charge Number is 520-2022-06036.

12. On or about September 5, 2024, Plaintiff received a Right to Sue Letter from the United States Department of Justice, Civil Rights Division ("USDOJ") for Charge Number 520-2022-06036.

13. Furthermore, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York within ten (10) days of filing, pursuant to New York City Administrative Code § 8-502(c).

14. Accordingly, Plaintiff has or shall have satisfied all administrative prerequisites and is filing this case within the applicable statute of limitations.

15. Venue is proper in this Court, because Defendant the City of New York is located in the State of New York, County of New York, within the Southern District of New York.

**PARTIES**

16. At all times material, Plaintiff was a Hispanic/Latina and African-American/Black female who is a resident of the State of New York, County of Westchester.

17. At all times material, Defendant the City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York with a principal place of business in the County of New York.

18. At all times material, Defendant New York City Fire Department was and is an agency of the City of New York with a principal place of business at 9 MetroTech Center, County of Kings, City and State of New York.

19. At all times material, Defendant Ronald Riccitelli was and is Deputy Chief New York City Fire Department. Riccitelli held supervisory authority over Plaintiff, and held the power to hire and fire Plaintiff.

20. At all times material, the City of New York and New York City Fire Department were either a single integrated employer or joint employers of Plaintiff.

21. At all times material, Defendants meet the definition of an employer under all applicable state and local statutes.

## **MATERIAL FACTS**

22. On or about October 15, 2019, Plaintiff began her employment with Defendant FDNY as "Fire Prevention Inspector" in Defendant FDNY's Bureau of Fire Prevention.

23. Initially, Plaintiff was assigned to Defendant Sprinkler Standpipe Unit.

24. In or around July or August 2020, Plaintiff was transferred to the FDNY's Customer Service Center ("CSC").

***Plaintiff is subjected to discrimination, harassment, and retaliation on March 90, 2021 after responding to a complaint by a member of the public deemed a chronic complainer and "besides, she lives in the projects in the Bronx."***

25. On or about March 9, 2021, Plaintiff received a call regarding a complaint for 1385 Washington Avenue, located in the County of Bronx, City and State of New York.

26. Upon information and belief, previously this individual had made multiple complaints to the FDNY's CSC about torch/welding operations being conducted at that location. Nevertheless,

Plaintiff spoke with the caller, and the caller provided her contact details and apartment access. Thereafter, Plaintiff reopened her file and logged the call into the CSC's system.

27. About one (1) minute later, the call was marked "closed" in CSC's system. Plaintiff then received an instant message from Pamela St. Francis ("St. Francis"), CSC's Manager, on the "Service Now" application ("app"), advising Plaintiff not to reopen closed calls.

28. Shortly thereafter, Plaintiff received a call from Ms. St. Francis, who explained that the woman was a chronic caller, and **"Besides, she lives in the projects in the Bronx. We are not dispatching anyone there again."**

29. Plaintiff calmly shared with Ms. St. Francis that all members of the public are entitled to services from the FDNY, no matter what Borough or section of the City they live in or their socioeconomic status – whether they live in "the projects in the Bronx" or West 79th Street and West End Avenue.

30. Ms. St. Francis ignored Plaintiff's reminder regarding the FDNY's obligations to serve all residents of the City, and angrily responded, **"Do as I say, do not reopen that case!"** and hung up.

31. Plaintiff then received a call from William Coco ("Coco"), Solution Lead, who asked Plaintiff what had transpired. After Plaintiff explained her conversation with Ms. St. Francis, Mr. Coco ordered Plaintiff to "**Do as Pam says,"** and then hung up.

32. Plaintiff, unnerved by these phone calls, followed up with Ms. St. Francis and Mr. Coco by email asking for clarification.

33. Plaintiff also called the FDNY's Bureau of Investigations and Trials ("BITS") and spoke with Investigator Justin Boyle ("Boyle"), informing him of the incident that had occurred with Ms. St. Francis.

34. Mr. Boyle advised Plaintiff that Ms. St. Francis was not an active member of the Department, but rather, she was a hired contractor, and that Plaintiff would have to call the New York City Department of Investigations ("DOI").

35. Per Investigator Boyle's guidance, Plaintiff called DOI and spoke with Special Investigator Laura Martich ("Martich"). Plaintiff told Special Investigator Martich about the situation she (Plaintiff) experienced with Ms. St. Francis, including her follow-up email. Special Investigator Martich requested that Plaintiff forward the email to her (Ms. Martich), and Plaintiff complied with her (Martich's) request.

36. Plaintiff's email, first to St. Francis and Coco, then to Martich, contained the following:

RE: 1385 Washington Avenue Bronx, NY - BFP0042010

Boyle, Justin (FDNY) <Justin.Boyle@fdny.nyc.gov>
Wed 3/17/2021 8:22 AM

To: Delarosa, Katawba J. (FDNY) <Katawba.Delarosa@fdny.nyc.gov>
Received

From: Delarosa, Katawba J. (FDNY) <Katawba.Delarosa@fdny.nyc.gov>
Sent: Wednesday, March 17, 2021 8:22 AM
To: Boyle, Justin (FDNY) <Justin.Boyle@fdny.nyc.gov>
Subject: Fwd: 1385 Washington Avenue Bronx, NY - BFP0042010

Warm regards,

Katawba DeLaRosa, MA

Begin forwarded message:

> From: "Delarosa, Katawba J. (FDNY)" <Katawba.Delarosa@fdny.nyc.gov>
> Date: March 9, 2021 at 2:05:23 PM EST
> To: "lmartich@doi.nyc.gov" <lmartich@doi.nyc.gov>
> Subject: Fw: 1385 Washington Avenue Bronx, NY - BFP0042010

Warm regards,
Katawba DeLaRosa, MA
Fire Protection Inspector
Customer Service Center - CSC
FDNY Headquarters
9 Metrotech Center, 3rd Fl.
Brooklyn, NY  11201
646-988-7734 - Agency Cell
Katawba.Delarosa@fdny.nyc.gov

**From:** Delarosa, Katawba J. (FDNY) <Katawba.Delarosa@fdny.nyc.gov>
**Sent:** Tuesday, March 9, 2021 12:08 PM
**To:** St. Francis, Pam (FDNY) <Pamela.StFrancis@fdny.nyc.gov>
**Cc:** Coco, William (FDNY) <William.Coco@fdny.nyc.gov>
**Subject:** 1385 Washington Avenue Bronx, NY - BFP0042010

Pam, Bill,

Warm regards,
Katawba DeLaRosa, MA
Fire Protection Inspector
Customer Service Center - CSC
FDNY Headquarters
9 Metrotech Center, 3rd Fl.
Brooklyn, NY  11201
646-988-7734 - Agency Cell
Katawba.Delarosa@fdny.nyc.gov

**From:** Delarosa, Kata... J. (FDNY)

**From:** Delarosa, Katawba J. (FDNY) <Katawba.Delarosa@fdny.nyc.gov>
**Sent:** Tuesday, March 9, 2021 12:08 PM
**To:** St. Francis, Pam (FDNY) <Pamela.StFrancis@fdny.nyc.gov>
**Cc:** Coco, William (FDNY) <William.Coco@fdny.nyc.gov>
**Subject:** 1385 Washington Avenue Bronx, NY - BFP0042010

Pam, Bill,

On 1/6/2020 I took an oath to administer the department's mission with integrity; the CSC Customer Service unit as understood *should* operate with public safety goals as outlined in the 2014 Fire Code.

1385 Washington Avenue Bronx, NY - BFP0042010 complaint was assigned by me FPI DeLaRosa to BISP and subsequent to its dispatch was closed without merit by contracted employee Fazia Rahim today. The caller has in the past placed multiple complaints about the location where ICTF responded and found no cause for complaint because their arrival times contradict the time each hotwork/welding operation is conducted. I have spoken with the caller who has provided her information, apartment access and contact details to lead credence to her concerns; in fact I have heard the welding and drilling while on the line.

My concern is that her complaint is valid and will continue to go unresolved as messaged to you Pam, I heard the welding the first complaint received and today. She is respectful and true to her experience. We would be remiss if we allow ourselves to not read into substantiated complaints based on multitude and not validity.

As requested in the Service Now instant messenger, please have your staff exercise integrity with all complaints; this was a valid call. Please apprise as to how and when we afford/exercise opportunities to discount valid complaints? Which calls are to be deciphered as true from false? Are callers limited to a specific number of complaints? Will you agree to have either ICTF or BISP dispatched to this property during 2:00 a.m. - 4:00 a.m. for possible fire code violation?

This is a safety issue.

37. In the first instance of retaliation at the hands of Defendants, on or about March 16, 2021, Plaintiff noticed that while she was working, her credentials were blocked.

38. Later that day, Plaintiff received an email from William Coco stating, **"Effective immediately, you are to stop taking any CSC helpdesk calls until further notice. Please report to HQ at 10:00 AM, tomorrow 3/17/2021, conference room 3S-7 for further discussion."**

39. On or about March 17, 2021, Robert Rampino (another CSC Manager) and Mr. Coco told Plaintiff that she would no longer be assigned to CSC as she had "falsified documentation and was a public threat." Instead, Plaintiff would be reporting to Chief Inspector Fitzroy Benjamin and Administrative Fire Inspector Trevor Klass.

40. Chief Inspector Benjamin explained that Plaintiff's role would be to assist him (Benjamin) with training the entire Bureau of Fire Prevention on the new Accela Automation. During this same conversation, Chief Inspector Benjamin advised Plaintiff that she was under investigation by BITS and DOI and that she was required to avoid public contact pending the outcome of the investigations.

41. Shortly after her conversation with Chief Inspector Benjamin, on or about March 17, 2021, Plaintiff sent BITS Investigator Boyle her March 9, 2021 email that was previously sent to Managers Pamela St. Francis and William Coco, as well as Special Investigator Laura Martich, and asked for assistance with the harassment.

42. Instead of offering any help with the discrimination or harassment whatsoever, on May 10, 2021, Special Investigator Martich sent Plaintiff an email with an attached letter/memo stating that pursuant to Mayoral Executive Order 16, Plaintiff was to appear before the Department of Investigation via Zoom on May 18, 2021 at 11:30 a.m. The letter/memo provided that Plaintiff's failure to appear as directed could result in removal from employment or other appropriate penalty.

43. Plaintiff complied with the May 10, 2021 order, and appeared for the investigation on or about May 18, 2021 for the interview. Thereafter, Plaintiff awaited the outcome of both the DOI and BITS investigations.

***Plaintiff is subjected to unwanted severe and/or pervasive sexual harassment, Discrimination, and retaliation at the FDNY at the hands of DCI Dominic Crecenzo, FPI Anika Saul-Ryan, and Defendant Deputy Chief Ronald Riccitelli***

44. In an email on or about October 27, 2021 with the subject line, **"A cry for help"** ("October 27, 2021 email"), Plaintiff informed Assistant Chief Kevin Brennan, Chief Anthony Saccavino,[5] and the BITS Investigations email account, also cc'ed to FDNY Chief Inspectors Richard Shaw, Fitzroy Benjamin, and Trevor Klass, that she had contacted by the FDNY's Equal Employment Opportunity Office ("EEO Office") about a complaint related to Deputy Chief Inspector Dominic Crecenzo ("DCI Crecenzo") stating that **Plaintiff's COVID face mask reminded him of his wife Sharon's panties.**

45. In the October 27, 2021 email, Plaintiff acknowledged that the event occurred in July 2019 and DCI Crecenzo apologized to her during the pendency of that investigation. However, Plaintiff provided that she **"did not want to proceed nor become a part of the complaint as I know that would have been career suicide."**

46. Below is the relevant portion of Plaintiff's October 27, 2021 email regarding those events:

From: Delarosa, Katawba J. (FDNY) <Katawba.Delarosa@fdny.nyc.gov>
Sent: Wednesday, October 27, 2021 1:44 AM
To: Brennan, Kevin J. (FDNY) <Kevin.Brennan@fdny.nyc.gov>; Saccavino, Anthony M. (FDNY) <Anthony.Saccavino@fdny.nyc.gov>; BITS Investigations (FDNY) <BITS.Investigations@fdny.nyc.gov>
Cc: Shaw, Richard (FDNY) <Richard.Shaw@fdny.nyc.gov>; Benjamin, Fitzroy (FDNY) <Fitzroy.Benjamin@fdny.nyc.gov>; Klass, Trevor (FDNY) <Trevor.Klass@fdny.nyc.gov>; Cendagorta, Louis (FDNY) <Louis.Cendagorta@fdny.nyc.gov>
Subject: A cry for help

Good morning all,

As a member of the FDNY, I have been victimized and retaliated against because of a March 9, 2021 complaint to the Department of Investigations and The Bureau of Investigations and Trials. My complaint

---

[5] On or about September 18, 2024, Chief Saccavino and another former BFP Chief were indicted by the United States Attorney for the Southern District of New York under charges of bribery, corruption, and false statements. See: https://www.justice.gov/usao-sdny/pr/two-former-high-ranking-fdny-officials-charged-bribery-corruption-and-false-statements. (Last accessed November 23, 2024).

detailed ways in which the Customer Service Center supervision chooses to discriminate against those customers who may have social/economic challenges. I was honest and forthcoming with my experience there only to be removed from the unit by William CoCo and Robert Rampino one week later; their assertion to the department was I am a public threat and suggested I remain disengaged from all public contact.

I was interviewed and my status has been held in abeyance while awaiting an outcome from BITs.

2. On or about 7/21/2021 I was contacted by EEO regarding a complaint where someone witnessed DCI Dominic Crecenzo express how my COVID face mask reminded him of his wife Sharon's panties to me. Although the event happened during July 2019 and he apologized the case was under investigation. I acknowledged the event honestly and expressed how I did not want to proceed nor become a part of the complaint as I know that would have been career suicide.

47. In that October 27, 2021 email, Plaintiff also provided that on or about September 17, 2021, Plaintiff was in the hallway outside of Fire Chief Anthony Prestigiacomo's ("Prestigiacomo") office to ask a question about her uniform. Deputy Chief Inspector Darryl Chalmers ("DCI Chalmers") screamed at Plaintiff, **"I'm in a meeting!"**, stepped inside the office, and slid/slammed Chief Prestigiacomo's office door in Plaintiff's face. Plaintiff immediately reported the event to Chief Inspector Klass. DCI Chalmers apologized later that day.

3. On 9/17/21 DCI Darryl Chalmers slid/slammed Chief Prestigaucomo's office door in my face as he yelled I'm in a meeting when asked for information about my uniforms. DCI Chalmers and I were standing in the hall outside of the office. I was mortified and brought the matter to the attention of Chief Inspector Trevor Klass immediately. Later that day DCI Chalmers apologized.

48. On or about September 22, 2021, while Plaintiff was on her way to the restroom, DCI Chalmers again apologized for his behavior. During their conversation, Fire Protection Inspector Anika Ryan-Saul ("FPI Ryan-Saul"), whom upon information and belief is DCI Chalmers's cousin, approached them (Plaintiff and Chalmers) and screamed that she needed to speak with DCI Chalmers. DCI Chalmers informed FPI Ryan-Saul that he would speak with her (Ryan-Saul) after his discussion with Plaintiff.

49. No sooner than five (5) minutes later, FPI Ryan-Saul returned, shouting at DCI Chalmers and asking DCI Chalmers, "**What is taking so long? I need to speak with you now.**"

50. After speaking with DCI Chalmers, Plaintiff went the restroom.

51. Later that day Plaintiff was notified by Deputy Chief Inspector Richard Singh ("DCI Singh") and Chief Inspector Fitzroy Benjamin that **there was a workplace violence case filed against her by FPI Ryan-Saul.**

52. Plaintiff immediately called Chief Inspector Fitzroy Benjamin and complained him that she was stressed out by these recent events, and shared that the FDNY was a hostile work environment and an extremely uncomfortable place to work, to the point where she felt that she had no other choice but to resign. Chief Inspector Fitzroy Benjamin instructed Plaintiff to report to DCI Singh and share with him what she (Plaintiff) had stated.

53. Plaintiff complied with Chief Benjamin's directive and spoke to DCI Singh. DCI Sign advised Plaintiff against resigning.

54. Nevertheless, despite Plaintiff's complaints, on or about September 23, 2021, Rodalton Poole, Esq. of BITS served Plaintiff with a "Notice of Interview - Subject" to appear for another Zoom interview on September 27, 2021 at 11:00 am regarding the allegations made by FPI Ryan-Saul.

55. Furthermore, on or about September 23, 2021, Chief Inspector Fitzroy Benjamin served Plaintiff with a Memorandum ordering Plaintiff to be temporarily assigned to District Office 6/7 effective September 27, 2021 pending the resolution of the investigation into FPI Ryan-Saul's workplace complaint against Plaintiff.

56. Plaintiff's October 27, 2021 email directly stated the events regarding the workplace violence case brought against her by FPI Ryan-Saul:

4. On 9/22/21 DCI Darryl Chalmers asked to speak with me as I walked to the restroom. I complied and asked to speak in private away from the gathered crowd near his desk. He offered another apology and shared that his behavior was out of linen Friday 9/17/21. I accepted but while speaking with him his 1/3 cousins FPI Anika Ryan-Saul approached and yelled that she needed to speak with him. He let her know that once done speaking with me he will find her. No sooner than approximately 5 minutes later she reappeared yelling and asking what was taking so long? She needed to speak with him now. At no point did I say anything to her but I asked DCI Chalmers to share with his family members how important it is as an executive union official/supervisor they have to be patient and understanding when he is engaged with other members.

5. On 9/22/21 after speaking with iDCI Chalmers I went into the restroom. Once there his cousin FPI Ryan-Saul was standing at the sink visibly upset speaking on what appeared to be an earpiece. I washed my hands and entered the stall. There were no words exchanged with her. Once I was done I exited to stall and was now alone in the restroom. Later that day I was notified by Deputy Chief Inspector Singh and Chief Inspector Benjamin that there was a workplace violence case filed against me by FPI Anika Ryan-Saul.

Subsequent to this fabrication I was told I was a threat to an employee's safety and will be removed temporarily out of FDNY Headquarters pending BITs' investigation. I was interviewed as witnessed by my union official where my statement remained in the same. I did not commit any act of violence/threat.

57. On or about September 23, 2021, Plaintiff emailed BITS and the FDNY's EEO Office her statement and a letter notifying both units of nepotism in the Bureau regarding the workplace violence allegation and the hostile work environment to seek assistance.

58. Plaintiff never received any response related to her allegations of nepotism within the Bureau.

59. On or about September 29, 2021, the BITS hearing was conducted and concluded. Pending the outcome of that investigation, Plaintiff returned to District Organization 14.

60. Upon her return to District Organization 14, Plaintiff was assigned to train the staff on the Accela Automation App.

61. Plaintiff also recounted the following events regarding the hostile work environment and appalling sexual harassment she endured at the hands of Defendant Deputy Chief Ronald Riccitelli ("Defendant Riccitelli") in her October 27, 2021 email:

A. On 9/27/21 CI Ricciteli asked if I had children? Asked if my husband was black? Asked if I liked Italian men? I responded yes, mixed and I respect all ethnicities.

B. 9/30/21 CI Ricciteli asked for my personal cell number. When asked why? He replied I get all the pretty girls' cell numbers. I informed him that I have an agency cell and he said it's ok. Give me your personal number too. I compiled. I was told to text him the next day once I arrived at my doctor's appointment.

C. 10/1/21 CI Ricciteli I text a picture of my iron infusioned arm with the i.v and shared that once done I will be headed to the office. Once there I was asked what were my plans for the weekend. I explained. To which CI Ricciteli responded that's unfortunate because you and I could've had some fun this weekend. I reminded CI Ricciteli that he authorized overtime for me and I would be here at the office. He agreed.

62. On or about October 14, 2021, while training Clerical Associate Alicia Valentin ("Valentin") on Accela Automation, Defendant Riccitelli called Plaintiff into his office and **requested that Plaintiff secretly take a picture of the FDNY's "geriatric patient" (referring to Valentin") so he can have proof she was trained**.

63. Plaintiff explained to Defendant Riccitelli that she did not feel comfortable with the directive. In response, Defendant Riccitelli stated that his request **was a direct order**.

64. Plaintiff complied and texted Defendant Riccitelli a picture of Valentin from her personal cell.

65. Defendant Riccitelli responded with **culturally insensitive and stereotypical GIFs of black women "snapping fingers"** and **"throwing hands in the air,"** along with one white male showing **"thumbs up."**

66. Below is the portion of the October 27, 2021 email related to Plaintiff's complaint about the events on or about October 14, 2021:

D. 10/14/21 CI Ricciteli asked that I secretly take a picture of our "geriatric patient" as I trained an employee on Accela so he can have proof she was trained. I explained to him that I didn't feel comfortable and was told that this was a direct order. I complied and text him her picture from my personal cell. He responded with gifs of black women and one white male showing thumbs up.

67.  Plaintiff was extremely insulted and offended by Defendant Riccitelli's abhorrent conduct toward Valentin and the racist GIFs that he sent her (Plaintiff).

68. On or about October 15, 2021, Defendant Riccitelli reminded Plaintiff that on October 18, 2021 she was assigned to train the **"other geriatric patient Mr. Jonas"** (referring to Deputy Chief John "Jay" Jonas, a 38-year veteran of the FDNY who served on Ladder 8 during the September 11, 2001 attack on the World Trade Center).

69.  That same day, Defendant Riccitelli reminded Plaintiff that **she should be "happy to work with him as he has authorized lots of overtime"** for Plaintiff.

70. Defendant Riccitelli then asked Plaintiff to **"join him on his birthday"** on October 26, 2021. Plaintiff respectfully declined and Defendant Riccitelli responded that **"that was a mistake."**

71. Defendant Riccitelli **also asked about Plaintiff's plans for the weekend**. Plaintiff reminded Defendant Riccitelli that she was working overtime at the office.

72. Plaintiff's October 27, 2021 email to the FDNY recounts this incident with Defendant Riccitelli:

> E. 10/15/21 CI Ricciteli reminded me that I should be happy to work with him as he has authorized lots of overtime for me. He asked me to join him for his birthday on 10/26. I respectfully declined and he stated that - that was a mistake. He asked what were my plans for
>
> the weekend and I reminded him that I was working overtime this weekend at the office. He said ok.

73.  Additionally, on or about October 18, 2021, Plaintiff was instructed by Defendant Riccitelli to start emailing him each day she reported to the office.

74. Plaintiff left Defendant Riccitelli's office and sent him an email confirming his command. Defendant Riccitelli called Plaintiff into his office and asked, "What is your problem?" Defendant

Riccitelli then ordered Plaintiff not to email him but to call his personal cell from her personal cell each day upon arrival.

75. Plaintiff recounted these events in her October 27, 2021 email:

6. On 10/18/21 while temporarily assigned to District Office Organization 6/7 I was instructed by Chief Inspector Ronald Ricciteli to start calling him from my personal cell to his personal cell every morning upon my arrival. When asked is this Standard Operating Procedure? He replied for me it is. He then stated that this is a para military organization and if he told me to hop on one leg and bark like a dog, I better do it. I started to feel anxious, weak and sick. I excused myself and went to the bathroom where I vomited and became sweaty. I caught an immediate migraine. Upon exit I notified AFPIii Nurudeen that I needed air and went downstairs to clear my head and process what just happened.

76. Upon return, Defendant Riccitelli called Plaintiff into his office and asked where she had been. Plaintiff explained that she had felt sick and needed to leave.

77. Defendant Riccitelli called Associate Fire Protection Inspector Level II AFPII Aaron J. Martin, Jr. ("AFPII Martin") into his office and informed AFPII Martin that Plaintiff required "clarification" on how things operated in the FDNY. Defendant Riccitelli ordered AFPII Martin to verify that the **FDNY is a paramilitary organization, and Plaintiff is to comply with demands**.

78. Plaintiff asked AFPII Martin if he (Martin) had ever been commanded to call Defendant Riccitelli from his personal cell to his personal cell upon arrival each day. **AFPII Martin admitted that he was not required to do so.**

79. Plaintiff then advised both Defendant Riccitelli and AFPII Martin that she was sick and needed to leave immediately, based on Defendant Riccitelli's conduct.

80. On or about October 18, 2021, Plaintiff requested Intermittent Family and Medical Leave Act Leave ("Intermittent FMLA Leave") from the FDNY's Civil Leave Unit.

81. On or about October 19, 2021, Defendant FDNY and/or the City approved Plaintiff's request for Intermittent FMLA Leave for the period of October 19, 2021 to April 1, 2022.

82. On or about October 25, 2021, upon Plaintiff's return to work return per her doctors' orders, Plaintiff was informed by Defendant Riccitelli that she had no authority to be in the building at 453 East 176th Street. Defendant Riccitelli stated, **"You're done! You're fired."**

83. In a fit of rage, Defendant Riccitelli called AFPIII Nurudeen Kalejaiye ("AFPIII Kalejaiye") and instructed her to box Plaintiff's belongings and escort Plaintiff out of the building.

84. Plaintiff complied and sat inside her car parked across the street inside the department lot, not knowing where to go.

85. Plaintiff called the EEO Office and BITs and spoke with Michael Greco of Local 2507. Mr. Greco advised Plaintiff that no one had been informed of her termination or change in employment status, and that Plaintiff was still an active member of the FDNY.

86. Approximately two (2) hours later, Plaintiff was approached by AFPII Martin to report to Chief Brennan.

87. Plaintiff complained about these events in her October 27, 2021 email:

> G. On 10/25/21 upon return per doctor's orders I was informed by CI Ricciteli that I had no authority to be in the building at 453 East 176 street and I was done. He said I was fired. He then called AFPI II Nurudeen over to box my belongings and escort me out of the building. I complied and sat inside my car parked across the street at the department lot not knowing where to go. I called EEO/BITs and spoke with Michael Greco of local 2507. No one had been informed of my termination or employment status.
>
> I was then approached by AFPII Martin to report to Chief Brennan at DOHQ. I complied and have been there since Monday 10/25/21.

88. Plaintiff concluded her October 27, 2021 email with the following plea for help:

I am aware that these men are powerful, influential and connected members of the FDNY and I have no power but I beg for these dilatory tactics used to thwart my employment to end. I am a credentialed employee who chooses to engage in professional decorum only. Since March 2021 I have been 1/2 Accela Automation trainers as trained by CI Benjamin. I have been a constant and active participant in assisting the bureau since Accela inception and FPIMS migration. My efforts have been salutary in the professional development and trading to all staff levels.

What I've experienced is handful of male members who assert their dominance upon those who may appear weak and/or eager to learn and grow professionally. Once those assertions were questioned or identified as problematic/uncomfortable I am defined/labeled as the "problem/threat/trouble maker".

This is a cry for help. I feel isolated and targeted.

89. On or about November 5, 2021, Plaintiff received a call from EEO – Adam Harris, Interim Attorney, who advised Plaintiff that were no prohibitions against working at FDNY Headquarters. Mr. Harris directed that Plaintiff was to return on November 8, 2021.

90. Plaintiff returned to FDNY Headquarters on or about November 8, 2021, reporting to Chief Fitzroy Benjamin as directed.

91. On or about December 29, 2021, Plaintiff, feeling extremely helpless, forwarded the "**Cry for help**" email from October 27, 2021 to Special Investigator Martich. In the body of the email, Plaintiff provided the following:

Good afternoon Ms. Martich,

On May 18, 2021 you interviewed me regarding my complaint of impropriety here at the FDNY's Customer Service Center. I contacted your office and shared how team leadership had been derilict and selective in their dispacth of FDNY personnel to certain areas/safety complaints throughout the city. I also shared the names of those involved and in return was retaliated against with a false claim by the very management employees involved. I have not been officially charged but am under extreme scrutin, distress, harrassment and retaliation since I contacted your office. There has been no shared outcome of the investigation. I am told that I am still under investigation and have been barred from working with the public at the request and direction of William CoCo and Robert Rampino.

Subsequent to our virtual interview, working here has been uncomfortable to say the least. I am pleading for resolve. I am distressed and embarrassed by the expereince in the last 8 to 9 months. It feels as if I am surrounded in a pool of alligators who are waiting, willing and have license to attack.

I have below forwarded (1 of 2) emails, which outlines what has happened since our conversation, and how I now sit in the middle of the workfloor at the direction of William CoCo. He has played a pivotal role with destroying my career, character and work environment. Bill had my cubicle taken away from me along with my iPAD and I now have weekly couseling/therapy sessions because I was depressed and suffered a profound panick attack in October.

Please read the thread.

Warm regards,
Katawba DeLaRosa, MA
Fire Protection Inspector
BFP Fires Project Integration Initiative
FDNY Headquarters

92. In the second series of incidents of retaliation from Defendants, on or about January 27, 2022, Plaintiff was removed from her original cubicle and instructed to sit in the middle of the work floor in a single chair.

93. Plaintiff immediately emailed FDNY leadership requesting a cubicle.

94. In or around March 2022, Plaintiff was permanently seated at a cubicle.

95. On or about June 2, 2022, Plaintiff was removed from the cubicle and moved across the building to a cubicle directly outside of the office of her harasser, Manager Coco, the first member that she had reported to.

96. On or about June 6, 2022, Plaintiff placed an anonymous call to 311/CSC regarding fire safety concerns shared by an employee.

97. On or about June 13, 2022, Chief Benjamin informed Plaintiff that she was the subject of another BITS investigation regarding allegations pertaining to the anonymous call of June 7, 2022.

98. On or about June 15, 2022, Inspector Klass advised that **"we don't report our colleagues."**

99. On or about June 16, 2022, Plaintiff appeared before the Bureau of Investigations, Trials, and Hearings with Mr. Greco, Vice President Local 2507 and Michael Reardon of Local 2507.

100.    On or about June 27, 2022, Plaintiff emailed FDNY Management, Bureau of Investigations, Trials, and Hearings (BITS), the FDNY Fire Marshals, the FDNY Commissioner, and FDNY's lead counsel of official misconduct within the FDNY and the need for safety. Plaintiff also spoke to Lieutenants Lee Vargas and John Deer of BITS related to these concerns and/or complaints.

101.    On or about June 28, 2022, Plaintiff reported to the FDNY Fire Marshals, Bureau of Investigations, Trials, and Hearings (BITS), and EEO Office regarding a live threat from an employee (Donna Chambers) who stated, **"DeLaRosa, you sealed your fate"** and "**I'm gonna get my son to beat your ass."**

102.    Plaintiff filed both an EEO complaint against Supervising Inspector Barrett and a Workplace violence complaint against Donna Chambers.

103.    On or about June 30, 2022, Chief Inspectors Benjamin Klass along with Deputy Chief Inspector Ortiz issued official charges from the FDNY. Shockingly, Plaintiff was refused union representation after requesting the representation four (4) times.

104.    On or about July 1, 2022, Plaintiff arrived at work an email from the EEO Office regarding the allegations that she sexually harassed another female employee.

105.    Plaintiff also sent a letter to Mark I. Cohen, Esq., the Federal Monitor appointed by the Honorable Nicholas G. Garaufis, U.S.D.J. regarding the FDNY's hiring practices.

106.    Plaintiff's letter provided the following:

Dear Mr. Cohen,

My name is Katawba DeLaRosa, and I am a Fire Protection Inspector at the FDNY. I understand that you are the federal court monitor appointed by the Honorable Judge Nicholas Garaufis to ensure integrity with my department's disgraceful hiring practices.

I began working for the FDNY on October 15, 2019, and my experience here has been horrific. There have been vacancy announcements where my qualifications and skills aligned with the position; however, I am continuously denied appointment even after in most cases a third interview. I earned a Bachelor of Arts in Public Administration and a Master of Arts in Human Resource Management - The Studies of the Americas from The City University of New York (City College).

Please do not be fooled by the smoke and mirrors that the recruitment and retentions unit places before you because, I interviewed with their team leadership and was not hired with an extensive background in recruitment. There is profound nepotism, colorism, and disenfranchisement in play here. Please dig deep and investigate the people responsible. For example, Carline Germain – Deputy Director, Administration & Planning FDNY Bureau of Fire Prevention who has not earned any degree, has an inappropriate sexual relationship with DC37/Local 2507 Executive Union Leadership – Deputy Chief Inspector Daryl Chalmers of Fire Prevention, and who violates employee confidentiality habitually. Deputy Chief Inspector Daryl Chalmers of Fire Prevention has direct access through Carline of each application I have submitted and inserted himself into maligning and derailing my career here.

The FDNY has a secret and if you dig deep, you will reveal what lies beneath its surface. Please continue to do your level best and hold those responsible for this sad and disheartening game.

***Plaintiff is blacklisted from promotions or any other opportunities at the FDNY
in retaliation for her complaints of discrimination and sexual harassment.***

107.    As a result of the abhorrent discrimination and sexual harassment inflicted upon Plaintiff by Defendants, and in retaliation for Plaintiff complaining about the unlawful discrimination and sexual harassment and for taking protected leave, Plaintiff was never provided with the opportunity to be promoted, let alone interviewed, for administrative positions, especially in Human Resources, as Plaintiff has a Master's Degree in Human Resources, where she could use her education, knowledge and expertise to benefit the FDNY.

108.    On or about June 24, 2022, Plaintiff emailed Jeffrey Assisi, Senior Director, Talent & Employee Services at the FDNY with the following:

**Subject:** Katawba DeLaRosa, FPI

Good afternoon Mr. Assisi

My name is Katawba DeLaRosa and I am an FPI (Fire Protection Inspector) in the Bureau of Fire Prevention. I write to ask to schedule a confidential meeting with you at your earliest convenience as I am an experienced, skilled, and credentialed Human Resource professional who applied to the following Human Resource/Human Capitol roles within FDNY all to be found ineligible/not interviewed-not hired.



Attached herein you have my resume as a cross-reference tool that leads credence to my eligibility. Please note that I am reachable on the DCAS Staff Analyst list, Research Assistant list, and await the Administrative Manager list publishing.  Please help me to understand how and why I have been overlooked time and time again.

- Vacancy Announcement - 431050, Manager - HR Information Center, applied on 02/04/2020 (No Interview/Not Hired)
- Vacancy Announcement - 453976, EMS Payroll Manager, applied on 11/23/2020 (No Interview/Not Hired)
- ✳ Vacancy Announcement - 456674, Director of Employee and Staffing Services, applied on 2/02/2021 (✖ Interview/Not Hired)
- Vacancy Announcement - 462257, Senior Human Resources Specialist, applied on 5/12/2021 (No Interview/Not Hired)
- Vacancy Announcement - 464102, HR Talent Specialist, applied on 5/25/2021 (No Interview/Not Hired)
- Vacancy Announcement - 465422, Deputy Director of Employee Processing & Staffing Services, applied on 6/09/2021 (No Interview/Not Hired)
- Vacancy Announcement - 465347, Deputy Director of Employee Processing & Staffing, applied on 6/09/2021 (Not Hired)
- Vacancy Announcement - 434049, Director of Talent Acquisition, applied on 8/27/2021 (No Interview/Not Hired)
- Vacancy Announcement - 434049, Director of Talent Acquisition, applied on 9/15/2021 (No Interview/Not Hired)
- Vacancy Announcement - 490332, Director of Training and Compliance, applied on 10/09/2021 (No Interview/Not Hired)
- Vacancy Announcement - 490349, Human Resource Generalist, applied on 10/13/2021 (No Interview/Not Hired)
- Vacancy Announcement - 489873, Human Resource Generalist, applied on 10/13/2021 (No Interview/Not Hired)
- Vacancy Announcement - 493144, Senior Human Resources Specialist, applied on 10/16/2021 (No Interview/Not Hired)
- Vacancy Announcement - 497060, HR Talent Acquisition and Compensation Manager, applied on 11/01/2021 (No Interview/Not Hired)
- Vacancy Announcement - 495275, Director of Benefits and Leave, applied on 11/01/2021 (No Interview/Not Hired)
- Vacancy Announcement - 498676, HR Training and Compliance Manager, applied on 11/03/2021 (No Interview/Not Hired)
- Vacancy Announcement - 502162, Budget and Compensation Manager, applied on 11/22/2021 (No Interview/Not Hired)

- Vacancy Announcement - 502162, Budget and Compensation Manager, applied on 11/22/2021 (No Interview/Not Hired)
- Vacancy Announcement - 501850, HR Leave Supervisor, applied on 12/14/2021 (No Interview/Not Hired)
- Vacancy Announcement - 434290, Event Coordinator (Recruitment and Retention), applied on 1/27/2021 (Interviewed(2)/Not Hired)
- Vacancy Announcement - 501851, HR Leave Supervisor, applied on 3/03/2022 (No Interview/Not Hired)
- Vacancy Announcement - 525202, Assistant Supervisor of Timekeeping, applied on 4/01/2022 (No Interview/Not Hired)

- Vacancy Announcement: 366366, FPI - Fire Protection Inspector, applied on 11/08/2018 (no interview/not hired)
- Vacancy Announcement: 384418, FPI - Fire Protection Inspector, applied on 3/23/2019 (no interview/not hired)
- Vacancy Announcement: 406391, FPI - Fire Protection Inspector, applied on 9/25/2019 (interviewed/hired)
- Vacancy Announcement: 430159, Manager of Company Recognition and Special Certifications, applied on 2/04/2020 (no interview/not hired)
- Vacancy Announcement: 431050, Manager-HR Information Center, applied on 2/04/2020 (no interview/not hired)
- Vacancy Announcement: 427967, EAP Specialist, applied on 2/08/2020 (no interview/not hired)
- Vacancy Announcement: 414484, Customer Service Representative, applied on 4/07/2020 (interviewed/hired-lateral)
- Vacancy Announcement: 406718, FDNY Representative, applied on 4/07/2020 (no interview/not hired)
- Vacancy Announcement: 446375, Director of Budget Services, applied on 9/29/2020 (no interview/not hired)
- Vacancy Announcement: 448259, Chief Information Security Officer (CISO), applied on 11/06/2020 (no interview/not hired)
- Vacancy Announcement: 452629, Field Inspector, applied on 11/13/2020 (no interview/not hired)
- Vacancy Announcement: 452631, Supervising Inspector of Fire Alarm Inspection Unit, applied on 11/13/2020 (no interview/not hired)
- Vacancy Announcement: 453976, EMS Payroll Manager, applied on 11/23/2020 (no interview/not hired)
- Vacancy Announcement: 446375, Director of Budget Services, applied on 9/29/2020 (no interview/not hired)
- Vacancy Announcement - 456674, Director of Employee and Staffing Services, applied on 2/02/2021 (Interviewed/Not Hired)
- Vacancy Announcement - 460939, Chief Dispatcher, applied on 4/13/2021 (No Interview/Not Hired)
- Vacancy Announcement - 460665, Administrative Project Manager, applied on 4/19/2021 (No Interview/Not Hired)
- Vacancy Announcement - 461263, Field Inspector, applied on 5/05/2021 (No Interview/Not Hired)
- Vacancy Announcement: 461892, Supervising Inspector of Public Buildings, applied on 05/05/2021 (No Interview/Not Hired)
- Vacancy Announcement: 436130, Supervising Inspector of the District Office - Level II, applied on 05/11/2021 (No Interview/Not Hired)
- Vacancy Announcement: 427285, Plan Reviewer Trainee, applied on 05/11/2021 (No Interview/Not Hired)
- Vacancy Announcement: 462257, Senior Human Resources Specialist, applied on 05/05/2021 (No Interview/Not Hired)
- Vacancy Announcement: 463237, Supervising Inspector of the Lab Unit, applied on 5/20/2021 (No Interview/Not Hired)
- Vacancy Announcement: 461892, Supervising Inspector of Public Buildings, applied on 05/05/2021 (No Interview/Not Hired)
- Vacancy Announcement - 464102, HR Talent Specialist, applied on 5/25/2021 (No Interview/Not Hired)
- Vacancy Announcement - 432808, Supervising Inspector, applied on 6/07/2021 (No Interview/Not Hired)
- Vacancy Announcement - 465422, Deputy Director of Employee Processing & Staffing Services, applied on 6/09/2021 (No Interview/Not Hired)
- Vacancy Announcement - 465347, Deputy Director of Employee Processing & Staffing, applied on 6/09/2021 (No Interview/Not Hired)
- Vacancy Announcement - 434049, Director of Talent Acquisition, applied on 8/27/2021 (No Interview/Not Hired)
- Vacancy Announcement - 434049, Director of Talent Acquisition, applied on 9/15/2021 (No Interview/Not Hired)
- Vacancy Announcement - 489776, Associate Fire Protection Inspector, applied on 10/09/2021 (No Interview/Not Hired)
- Vacancy Announcement - 490332, Director of Training and Compliance, applied on 10/09/2021 (No Interview/Not Hired)
- Vacancy Announcement - 490349, Human Resource Generalist, applied on 10/13/2021 (No Interview/Not Hired)
- Vacancy Announcement - 489873, Human Resource Generalist, applied on 10/13/2021 (No Interview/Not Hired)
- Vacancy Announcement - 490349, Human Resource Generalist, applied on 10/13/2021 (No Interview/Not Hired)
- Vacancy Announcement - 431042, Supervisor of Telephones Adjudications, applied on 10/16/2021 (No Interview/Not Hired)*
- Vacancy Announcement - 493144, Senior Human Resources Specialist, applied on 10/16/2021 (No Interview/Not Hired)
- Vacancy Announcement - 471080, Associate Inspector (Electrical), applied on 11/01/2021 (No Interview/Not Hired)

- Vacancy Announcement - 495275, Director of Benefits and Leave, applied on 11/01/2021 (No Interview/Not Hired)
- Vacancy Announcement - 498676, HR Training and Compliance Manager, applied on 11/03/2021 (No Interview/Not Hired)
- Vacancy Announcement - 499242, Supervising Inspector of the Shelter Task Force, applied on 11/10/2021 (No Interview/Not Hired)
- Vacancy Announcement - 502162, Budget and Compensation Manager, applied on 11/22/2021 (No Interview/Not Hired)
- Vacancy Announcement - 503623, Executive Assistant to the Director of Performance Management, applied on 11/29/2021 (No Interview/Not Hired)
- Vacancy Announcement - 510619, Executive Assistant to the Chief of Fire Prevention, applied on 12/21/2021 (No Interview/Not Hired)*
- Vacancy Announcement - 497942, Assistant Electrical Engineer, applied on 1/06/2022 (No Interview/Not Hired)
- Vacancy Announcement - 516442, Supervisor of Telephones Adjudications, applied on 1/25/2022 (No Interview/Not Hired)*
- Vacancy Announcement - 497041, Data Analyst, applied on 1/25/2022 (No Interview/Not Hired)
- Vacancy Announcement - 516625, Administrative Public Records Officer, applied on 1/27/2022 (No Interview/Not Hired)
- Vacancy Announcement - 434290, Event Coordinator (Recruitment and Retention), applied on 1/27/2022 (Interviewed(X2)/Not Hired)
- Vacancy Announcement - 514322, Administrative Tests and Measurements Specialist, applied on 2/07/2022 (Interviewed/Not Hired)
- Vacancy Announcement - 522198, Employee Assistance Program Specialist, applied on 3/03/2022 (No Interview/Not Hired)
- Vacancy Announcement - 501851, HR Leave Supervisor, applied on 3/03/2022 (No Interview/Not Hired)
- Vacancy Announcement - 516442, Supervisor of Telephones Adjudications, applied on 3/09/2022 (No Interview/Not Hired)**
- Vacancy Announcement - 525202, Assistant Supervisor of Timekeeping, applied on 4/01/2022 (No Interview/Not Hired)
- Vacancy Announcement - 532024, Executive Assistant to the Assistant Commissioner of Human Resources, applied on 5/18/2022 (No Interview/Not Hired)

109.    Plaintiff concluded her email by advising Mr. Assisi that:

Notes: Items in yellow are positions applied for, interviewed, and was hired/selected. Items in blue are positions applied for, interviewed, and was not hired/selected. Items with red asterisk are positions applied for, no interview, not hire/selected but my male counterpart (Karlvin Despinos) with same inspector rank and no college degree was interviewed/given a chance but not hired. I was told by Eric Monk and Jose Marquez that they were told not to hire me. The two shared that my union executive leadership Daryl Chalmers informed the group not to hire me as I am trouble, do not hold credentials, and it would be a bad look for their unit

110.    This reprisal by the FDNY, that Plaintiff would not be hired as she is "trouble," and that "it would be a bad look for their unit" is evidenced by Plaintiff's email on or about June 22, 2022, wherein she advised Chief Inspector Richard Shaw that:

As discussed today, I am willing to remove myself from FDNY headquarters on temporary detail to assist your District Office 6/7 with all Accela Automation administrative needs. I am versed in the application and would be available to provide guidance as in the past.  Attached is my resume which highlights my skills, experience, and education in an effort to lead credence to the aforementioned.

111.    In response, and in continuation of the pattern of retaliation against Plaintiff, on or about June 29, 2022, Chief Inspector Shaw advised Plaintiff that, **"At the present time, I won't be needing your assistance in any District Office locations."**

112.    Ultimately, on or about October 21, 2022, Defendant FDNY constructively discharged Plaintiff due to sex/gender discrimination and in retaliation for Plaintiff's complaints about hostile work environment and Defendant Riccitelli's sexual harassment and egregious sexual advances.

113.    The above are just some of the examples of the unlawful discriminatory and retaliatory conduct to which Defendants subjected Plaintiff.

114.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

115.    As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments including extreme anxiety and severe depression.

116.    As a result of Defendants' unlawful and discriminatory actions, Plaintiff became so physically and emotionally distressed that she is having difficulty eating and sleeping.

117.    As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unwarranted financial hardships and irreparable damage to her professional reputation.

118.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any pre-existing condition.

119.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants, jointly and severally.

120.    Defendants' conduct constitutes a continuing violation. Plaintiff claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

**AS A FIRST CAUSE OF ACTION:**
**DISCRIMINATION UNDER TITLE VII**
**(As against Defendants City of New York and**
**New York City Emergency Management)**

121.     Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

122.      Title VII states in relevant part as follows:

"SEC. 2000e-2. [Section 703] (a) Employer Practices; it shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her/his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

123.     Defendants City of New York and New York City Emergency Management engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her sex/gender, ethnicity, and race/color.

124.     Defendants City of New York and New York City Emergency Management violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION:**
**RETALIATION UNDER TITLE VII**
**(As against Defendants City of New York and**
**New York City Emergency Management)**

125.     Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

126.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful

employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

127.    Defendants City of New York and New York City Emergency Management engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions, or privileges of employment because of her opposition to their unlawful employment practices.

128.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION: DISCRIMINATION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
(Against All Defendants)**

129.    Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

130.    The Administrative Code of the City of New York § 8-107(1) provides that "It shall be an unlawful discriminatory practice: '(a) For an employer or employee or agent thereof, because of the actual or perceived…race…[or] gender…of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.'"

131.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code, Title 8, § 8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff on the basis of her race (and/or gender, along with creating a hostile work environment.

132.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FOURTH CAUSE OF ACTION: RETALIATION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
(Against All Defendants)**

133.    Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

134.    New York City Administrative Code Title 8, § 8-107(7) provides that:

> "It shall be an unlawful employment practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

135.    Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff, including, but not limited to, terminating Plaintiff's employment because she opposed Defendants' unlawful employment practices.

136.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION: SUPERVISOR LIABILITY
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
(Against All Defendants)**

137.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

138.    New York City Administrative Code Title 8, § 8-107(13), Employer liability for discriminatory conduct by employee, agent or independent contractor.

a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

(1) the employee or agent exercised managerial or supervisor responsibility; or

(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

139. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION: INTERFERENCE WITH PROTECTED RIGHTS UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

140. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

141. New York City Administrative Code Title 8, § 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

142. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SEVENTH CAUSE OF ACTION:
## DISCRIMINATION UNDER STATE LAW
### (Against All Defendants)

143. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

144. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice '(a) For an employer or licensing agency, because of an individual's…race…[or] sex…, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

145. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff on the basis of her race and sex, together with creating a hostile work environment.

146. Plaintiff herby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

147. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN EIGHTH CAUSE OF ACTION:
## RETALIATION UNDER STATE LAW
### (Against All Defendants)

148. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

149. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

150. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

151. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A NINTH CAUSE OF ACTION:**
**AIDING AND ABETTING UNDER STATE LAW**
**(Against All Defendants)**

152. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

153. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

154. Each of the named Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

155. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN TENTH CAUSE OF ACTION:**
**FOR VIOLATIONS OF THE**
**FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2601 et seq.**
**(As Against Defendants City of New York and**
**New York City Emergency Management)**

156. Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

157. Section 2612 of the Family Medical Leave Act (FMLA) states in pertinent part:

(a) In general

(1) Entitlement to leave

Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: '

…

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee…

158.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN ELEVENTH CAUSE OF ACTION
FOR RETALIATION AND INTERFERENCE UNDER THE
FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 et seq.
(As Against Defendants City of New York and
New York City Emergency Management)**

159.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if the same were set forth herein fully at length.

160.    Section 2615 of the FMLA states as follows:

Prohibited acts

(a)  Interference with rights

(1)   Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

161.    Defendants unlawfully interfered, restrained, and denied Plaintiff's right to exercise and attempt to exercise Plaintiff's rights under the above section and discriminated and retaliated against Plaintiff for opposing Defendant's unlawful employment practice and attempting to exercise Plaintiff's rights.

162.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE,** Plaintiff respectfully requests judgment against Defendants:

A.      Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e *et seq.*, the Family and Medical Leave Act of 1993, 29 U.S.C.§ 2601 *et seq.*, the New York City Administrative Code Title 8, § 8-107 *et seq.* and the New York Executive Law, § 296 *et seq.*, and that Defendants harassed and discriminated against Plaintiff on the basis of her race and sex/gender, along with hostile work environment, aiding and abetting, and retaliation;

B.      Declaring that Defendants unlawfully constructively discharged Plaintiff;

C.      Awarding damages to Plaintiff, retroactive to the date of discharge, for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful termination of employment, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

D.      Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering, and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

E.      Awarding Plaintiff punitive damages;

F.      Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.      Awarding Plaintiff such other and further relief as this Honorable Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial, plus interest, punitive damages, attorneys' fees, costs, and disbursement of this action; and for such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated: December 2, 2024

**ERDAL EMPLOYMENT LAW, LLC**
Attorney(s) for Plaintiff
Katawba De La Rosa


By: /s/ Erdal Turnacioglu
       Erdal Turnacioglu, Esq.